**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MICHAEL WILLIAMS,**

                      **Petitioner,**

      **v.**                                          **CASE NO. 22-3081-SAC**

**DON LANGFORD,**

                        **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner, who is proceeding pro se, is a state prisoner incarcerated at Ellsworth Correctional Facility in Ellsworth, Kansas. This matter comes before the Court after extensive briefing on timeliness. For the reasons stated below, the Court concludes that Petitioner is entitled to equitable tolling, rendering this matter timely. Accordingly, the Court resumed the initial screening of the petition required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and has identified certain deficiencies in the petition. The Court will therefore direct Petitioner to advise the Court, in writing, whether he prefers that the Court stay this matter while he exhausts state-court remedies or he prefers to delete the unexhausted claims and proceed only on the exhausted claim.

**Background**

In 2012, in Sedgwick County, Kansas, Petitioner was convicted of first-degree premeditated murder, for which he was sentenced to life imprisonment without the possibility of parole for 25 years. Petitioner pursued a direct appeal and in April 2016, the Kansas Supreme Court (KSC) affirmed. On October 20, 2016, Petitioner filed his first K.S.A. 60-1507 motion for state habeas relief in Sedgwick County District Court. That motion was denied on August 3, 2017, and Petitioner appealed.

1

In early September 2017, attorney Roger Falk was appointed to represent Petitioner. Petitioner's appeal to the Kansas Court of Appeals (KCOA) was unsuccessful, and on November 18, 2018, Petitioner (through Mr. Falk) filed a petition for review with the Kansas Supreme Court (KSC).

On February 20, 2019, in an unrelated case, Mr. Falk informed the Sedgwick County District Court that he needed to withdraw as counsel in that matter because of medical problems that affected his memory, among other things. (Doc. 8, p. 3.) Yet Mr. Falk did not withdraw from representing Petitioner in Petitioner's then-pending appeal; he did not inform Petitioner when the KSC denied his petition for review on July 22, 2019; and he did not inform Petitioner when, on July 24, 2019, Mr. Falk's attorney registration status changed to "disabled," a status that prevented him from practicing law in the state of Kansas. *See* Kansas S. Ct. R. 206(b)(1)-(2)[1].

In May 2020, remaining unaware that the KSC had denied the petition for review, Petitioner repeatedly attempted to contact Mr. Falk by mail about the status of his appeal. His final attempt was returned labeled "No Longer at this Address/Return to Sender." With no other address for Mr. Falk, Petitioner waited for Mr. Falk to contact him, but Mr. Falk never did. Well aware that proceeding through the courts takes time[2], Petitioner alleges he believed Mr. Falk would contact him when necessary.

In April 2021, Petitioner learned from another inmate that he could write to the Kansas Clerk of the Appellate Court for information about his appeal. He did so and received a docket sheet for his appeal on April 27, 2021, only then learning that his petition for review was denied in July 2019.

Two months later, on June 29, 2021, Petitioner filed a second K.S.A. 60-1507 motion[3] in Sedgwick County District Court, this time alleging ineffective assistance from Mr. Falk. The Sedgwick County District Court appointed counsel to represent Petitioner, and the matter is currently pending in the Sedgwick County District Court.

---

[1] Formerly cited as KS R DISC Rule 208.
[2] As Petitioner points out, his direct appeal took over 3 years from start to finish, so his experience supported the conclusion that litigation is not always quickly resolved. (Doc. 8, p. 23.)
[3] Due to the KSC's suspension of certain deadlines during the COVID-19 pandemic, Petitioner's second 60-1507 motion was timely filed, as Respondent concedes. (See Doc. 5, p. 5-6.)

On April 21, 2022, Petitioner filed in this Court his petition under 28 U.S.C. § 2254 for writ of habeas corpus. (Doc. 1.) Upon receiving and reviewing the petition, the Court issued a Memorandum and Order directing Respondent to file a limited Pre-Answer Response (PAR) addressing the timeliness of this matter. (Doc. 3.) Respondent filed the PAR on June 7, 2022 and asserted that this matter was untimely filed and no circumstances exist to justify equitable tolling of the statute of limitations. (Doc. 5.)

After the Court reviewed the PAR, it issued a Memorandum and Order to Show Cause (MOSC) directing Petitioner to show cause why the matter should not be dismissed as time-barred. (Doc. 7.) In his response, filed on July 7, 2022, Petitioner conceded that his petition was filed outside of the statutory time limitation, but he asserted that the deadline is subject to equitable tolling. (Doc. 8.)

Because Petitioner's response to the MOSC contained new information in support of his claim to equitable tolling, on July 12, 2022, the Court issued a Memorandum and Order (M&O) directing Petitioner to file a status report regarding related ongoing state-court proceedings and affording Respondent the opportunity to reply to Petitioner's response to the MOSC. (Doc. 9.) Petitioner filed his status report (Doc. 12) on July 27, 2022, and Respondent filed his reply (Doc. 13) on August 12, 2022.

**Analysis**

### Timeliness

The question now before the Court is whether Petitioner is entitled to equitable tolling of the time between the date of the KSC's denial of review in his first 60-1507 proceedings and the date on which he learned of the denial of review.[4] If so, this matter is timely; if not, it must be dismissed as time-barred. (See Doc. 9, p. 5-6.)

Equitable tolling of the federal habeas time limitation applies "in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). It is

---

[4] If equitable tolling is warranted, the federal habeas limitation period would be statutorily tolled under 28 U.S.C. § 2244(d)(2) once Petitioner's second 60-1507 motion was filed.

available only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 127, 1220 (10th Cir. 2000). Such circumstances include, for example, "when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a deficient pleading during the statutory period." *Gibson*, 23 F.3d at 808 (internal citations omitted). Likewise, misconduct or "egregious behavior" by an attorney may warrant equitable tolling. *Holland v. Florida*, 560 U.S. 631, 651 (2010). However, "[s]imple excusable neglect is not sufficient." *Gibson*, 232 F.3d at 808 (citation omitted).

Petitioner identifies the following as the extraordinary circumstances beyond his control that prevented him from timely filing this matter: COVID-19 and attorney abandonment. (Doc. 8, p. 9.) Petitioner notes that the COVID-19 pandemic caused prison library closings and caused inmates to be quarantined to their cells for 3 to 4 months or to be moved between cells and facilities. *Id.* at 10. More specifically, Petitioner has detailed how COVID-19 protocols restricted his access to the law library. *Id.* at 10-11. He also explains that when he tested positive for COVID-19, he was transferred to another correctional facility for approximately 10 days. The inmate who was assisting Petitioner with his legal matters also tested positive at a different time and was similarly transferred. When both inmates were again housed in the same prison, the pods were segregated, so Petitioner could not communicate with the inmate assisting him "[f]or a period of time." *Id.* at 10.

In his reply, Respondent points out that Petitioner has provided no timeline for the COVID-19-related events he asserts. (Doc. 13, p. 10.) Simply put, without knowing when these events occurred, the Court cannot determine whether they occurred during the relevant time period for which equitable tolling is in question. In addition, the Tenth Circuit has previously rejected the argument that a federal habeas petition is "entitled to equitable tolling based on his allegedly limited access to the law library in the wake of COVID-19." *See Donald v. Pruitt*, 853 Fed. Appx. 230, 234 (10th Cir. 2021). Thus, the Court agrees with Respondent that the effects of COVID-19 as Petitioner has described them do not constitute extraordinary circumstances of the sort that justify equitable tolling.

With respect to the abandonment by counsel, Petitioner specifically highlights Mr. Falk's failure to communicate with him, failure to withdraw as counsel of record, and failure to advise Petitioner of the status of his 60-1507 proceedings. (Doc. 8, p. 9.) As noted above, Petitioner contends that he attempted unsuccessfully to contact Mr. Falk in May 2020, then he resumed waiting for his attorney to contact him. On April 20, 2021, Petitioner learned from "some of the jailhouse lawyers" that he could obtain a docket events list from the clerk of the Kansas Appellate Courts, which he did, and on April 27, 2021, he learned that his petition for review had been denied.

In his reply, Respondent first accurately notes that because "'[t]here is no constitutional right to an attorney in state post-conviction proceedings,'" the negligence of appointed state habeas counsel is not a basis for equitable tolling of the federal habeas statute of limitations. *See Fleming v. Evans*, 481 F.3d 1249, 1255 (10th Cir. 2007)(quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). "'The rationale is that attorney negligence is not extraordinary and clients, even if incarcerated, must "vigilantly oversee," and ultimately bear responsibility for, their attorneys' actions or failures.'" *Fleming*, 481 F.3d at 1255-56 (quoting *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) (other citations omitted)). However, "sufficiently egregious misconduct on the part of a habeas petitioner's counsel may justify equitable tolling of the AEDPA limitations period." *See Fleming*, 481 F.3d at 1256.

Respondent distinguishes *Fleming* from the instant case because Mr. Fleming's attorney disregarded instructions from the petitioner to take legal action and lied about having done so, whereas there is no allegation that Mr. Falk misled or lied to Petitioner. (Doc. 13, p. 13-14.) He also cites cases in which other federal Courts of Appeals have found egregious attorney misconduct that may justify equitable tolling and he cites to *Modrowski*, which addressed when "attorney incapacity" is an extraordinary circumstance that may justify equitable tolling. *Id.* at 14-15. Respondent argues that the Seventh Circuit's reasoning in *Modrowski* is persuasive. *Id.* at 15.

All of the cases Respondent cites to in this section of his reply[5], including *Modrowski*, were

---

[5] Respondent's discussion of *Maples v. Thomas*, 565 U.S. 266 (2012), with respect to attorney abandonment, is discussed below.

decided before the United States Supreme Court's decision in *Holland v. Florida*, 560 U.S. 631 (2010). In *Holland*, the Supreme Court decided, for the first time, that AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Id.* at 645, 49. As Petitioner notes, in doing so, it rejected the concept that an "attorney's unprofessional conduct, . . . even if it is 'negligent' or 'grossly negligence,' cannot 'rise to the level of egregious attorney misconduct' that would warrant equitable tolling unless the petitioner offers 'proof of bad faith, dishonesty, divided loyalty, mental impairment, or so forth.'" *Id.* at 634-35.

Contrary to the lower courts' holdings, the *Holland* Court reaffirmed "that often the 'exercise of a court's equity powers . . . must be made on a case-by-case basis.'" *Id.* at 649-50 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)). Thus, determining whether equitable tolling is justified involves an inherent flexibility that requires courts of equity to "exercise judgment in light of prior precedent" and similar cases, "but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* at 650. In light of the *Holland* Court's emphasis on flexibility and case-by-case determinations, the Court is not persuaded that the cases Respondent cites should determine the outcome in the case now before the Court.

Turning to Petitioner's final abandonment argument, both parties discuss *Maples v. Thomas*, 565 U.S. 266 (2012), which arose in the context of procedurally defaulted federal habeas claims but is important to this case because of its discussion of *Holland*. In *Maples*, the Court noted that Justice Alito's concurring opinion in *Holland* "homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." *Id.* at 282. The *Holland* Court continued:

> Holland's plea fit the latter category: He alleged abandonment "evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." If true, Justice ALITO explained, "petitioner's allegations would suffice to establish extraordinary circumstances beyond his control[:] Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word."

6

> We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him. We therefore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the "extraordinary circumstances beyond his control," necessary to lift the state procedural bar to his federal petition.

*Id.* at 282-83 (citations and internal footnote omitted).

Liberally construing Petitioner's response in the instant case, he contends that his situation is akin to that discussed in *Maples* and Justice Alito's concurrence in *Holland* and, thus, Mr. Falk's abandonment warrants equitable tolling. Respondent distinguishes *Maples* by accurately noting that Mr. Maples was under a death sentence, while Petitioner is not, and there was no allegation that Mr. Maples' counsel were mentally incapacitated as Petitioner alleges here. The Court is unpersuaded that abandonment by mentally incapacitated counsel is less compelling a reason for equitable tolling than abandonment by mentally sound counsel where, as here, there is no allegation that Petitioner was aware of Mr. Falk's mental status during the relevant time. And while capital sentences are undoubtedly different than non-capital sentences, that alone is not a material distinction here.

Accordingly, after thorough and careful consideration of the parties' arguments and the relevant caselaw, the Court concludes that Petitioner has sufficiently demonstrated that his failure to timely file his federal habeas petition was caused by extraordinary circumstances beyond his control, namely his abandonment by Mr. Falk. Moreover, in line with the holding in *Maples*, the Court will not fault Petitioner for failing to act on his own behalf during the time he mistakenly believed that his state appeal was pending and he was still represented by Mr. Falk. Petitioner had no reason to think that Mr. Falk was no longer representing him. When Petitioner learned of an avenue by which he could obtain information about his appeal, he promptly sought that information, learned that his petition for review was denied, and filed a second 60-1507 action just over 2 months later. Under the specific circumstances of this case, the Court finds that equitable tolling is warranted and the matter is timely filed.

**Rule 4 Preliminary Review**

With the timeliness question resolved, the Court returns to the preliminary review of the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief, . . . the judge must dismiss the petition." *See* Rule 4. Petitioner asserts four grounds for relief in his petition. First, he contends that he received ineffective assistance when trial counsel (1) failed to object on hearsay grounds during Detective Mumma's testimony; (2) "failed to proffer evidence and prepare [Petitioner] for trial"; (3) failed to call Deborah Weiss to testify; (4) "failed to investigate [Petitioner's] state of mind, and obtain[] an expert witness to negate the element of premeditation, and [Petitioner's] phone records." (Doc. 1, p. 7.)

In Ground Two, Petitioner asserts that he received ineffective assistance of appellate counsel because appellate counsel "failed to properly argue the *Brady* violation" and failed to argue that the trial court erred by failing to instruct the jury about "mental condition." *Id.* at 9.  In Ground Three, Petitioner asserts that his right to be present at all critical stages of the trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated when he was not present when the deliberating jurors made a request. *Id.* at 10. In Ground Four, Petitioner asserts he received ineffective assistance from post-conviction counsel when the attorney appointed to represent him during the 60-1507 appellate proceedings failed to notify Petitioner that the KSC had denied his petition for review. *Id.* at 12, 16. As relief, Petitioner asks that this Court remand this matter to the state court for an evidentiary hearing on whether 60-1507 appellate counsel was ineffective and for a new trial on the murder charge. *Id.* at 18.

**Relief Sought**

Petitioner asks the Court to remand this case to the state court and order an evidentiary hearing and a new trial. "When a federal court, on habeas review, examines state criminal convictions, the federal court does not sit as a 'super-appellate' court." *Davis v. Roberts*, 579 Fed. Appx. 662, 665 (10th Cir. 2014) (unpublished) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). "[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal

custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). The Court will liberally construe the relief sought in the petition as only seeking release from state custody. If this understanding of the petition is incorrect, Petitioner must so advise the Court.

**Failure to State a Claim on which Federal Habeas Relief Can Be Granted**

Ground Four of the petition seeks relief based on ineffective assistance from Mr. Falk during Petitioner's first K.S.A. 60-1507 proceeding.[6] (Doc. 1, p. 12.) "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Therefore, to the extent that Ground Four is intended to set forth a basis for substantive relief under § 2254, it is barred by federal statute.

**Exhaustion**

"'A threshold question that must be addressed in every habeas case is that of exhaustion.'" *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (quoting *Harris v. Champion*, 15 F.3d 1538, 1553 (10th Cir. 1994)). A state prisoner must exhaust all available state-court remedies before pursuing federal habeas relief unless it appears there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b)(1); *see also Bland v. Simmons*, 459 F.3d 999, 1011 (10th Cir. 2006). The exhaustion requirement exists to "give state courts a fair opportunity to act on [a petitioner's] claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

To satisfy the exhaustion requirement, Petitioner must have presented the very issues raised

---

[6] The Court notes that Ground Four may not have been intended to assert a substantive basis for federal habeas relief. The assertions contained in Ground Four do not appear to assert a basis for Petitioner's release from state custody; instead, they seem to seek equitable tolling in this matter based on Mr. Falk's abandonment of Petitioner. For example, the only prejudice identified as a result of Mr. Falk's alleged ineffective assistance is that the applicable statute of limitations expired prior to filing the present petition. As explained above, the Court has now applied equitable tolling in this matter and finds this petition was timely filed. However, because the Court must liberally construe pro se pleadings like the petition, the Court in an abundance of caution treats Ground Four as if it were intended to state an independent basis for federal habeas relief.

in the federal petition to the Kansas appellate courts, which must have denied relief. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); Kansas Supreme Court Rule 8.03B(a) ("In all appeals from criminal convictions or post-conviction relief on or after July 1, 2018, . . . when a claim has been presented to the Court of Appeals and relief has been denied, the party is deemed to have exhausted all available state remedies."). Petitioner bears the burden to show he has exhausted available state remedies. *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992); *see also Parkhurst v. Pacheco*, 809 Fed. Appx. 556, 557 (10th Cir. 2020).

The arguments in Ground One appear to have been exhausted in Petitioner's first 60-1507 proceeding. Grounds Two and Three, however, appear unexhausted. In Ground Two, Petitioner argues that he received ineffective assistance of appellate counsel because appellate counsel "failed to properly argue the *Brady* violation" and failed to argue that the trial court erred by failing to instruct the jury about "mental condition." (Doc. 1, p. 9. ) In Ground Three, Petitioner asserts that his right to be present at all critical stages of the trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated when he was not present when the deliberating jurors made a request. *Id.* at 10.

Petitioner contends that the arguments now in Grounds Two and Three were exhausted via his first 60-1507 proceeding (*see id.* at 9-111), but the KCOA opinion identifies the issues that were before it as follows:

> Williams argues that his counsel, Steven D. Mank, performed deficiently at trial and deprived him of a fair trial because Mank failed to (1) object to hearsay statements; (2) proffer evidence and prepare Williams to testify that he knew when he shot Putnam that Putnam had committed sexually violent acts against two women; (3) call Weiss to testify; and (4) investigate Williams' mental state before trial and obtain an expert witness to testify regarding a mental state defense. Williams also argues Mank's four instances of deficient performance cumulatively denied him of a fair trial. In his final claim on appeal, Williams argues we must remand because the district court completely failed to address his conflict of interest claim in violation of Rule 183(j).

*Williams*, 2018 WL 4939421, at *5. Thus, Grounds Two and Three appear unexhausted.

When a federal habeas petition is faced with a mixed petition, meaning that it contains exhausted and unexhausted claims and state-court remedies are still available for the unexhausted claims, the federal court generally should dismiss the matter "without prejudice so that the petitioner can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 891-92 (10th Cir. 2018) (internal citations and quotation marks omitted). In the instant case, the Court is not inclined to dismiss the matter without prejudice since it is not clear whether state-court remedies remain available for the unexhausted claims contained in Grounds Two and Three. A federal district court faced with a mixed petition has other options, including staying the petition and holding it in abeyance while the petitioner exhausts state-court remedies, denying the petition on the merits, and allowing the petitioner to delete the unexhausted claims and proceed only on the exhausted claims. *See Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016). A federal district court may stay habeas proceedings to permit exhaustion of state court remedies on a claim if (1) good cause exists for the failure to exhaust the claim prior to filing the federal habeas petition; (2) the unexhausted claim is not "plainly meritless"; and (3) the petitioner did not intentionally delay the proceedings. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

The Court will direct Petitioner to advise the Court, in writing, his preference for the Court's treatment of this case. If Petitioner prefers that the Court stay this matter and hold it in abeyance while he exhausts state-court remedies, Petitioner should address the three *Rhines* factors in his response to this order. If Petitioner opts to delete the unexhausted claims and proceed on only the exhausted claim--Ground One--in this habeas action, he should be aware that it will limit his ability to file a second § 2254 petition later raising the currently unexhausted claims. *See Case v. Hatch*, 731 F.3d 1015, 1026 (10th Cir. 2013) ("The filing of a second or successive § 2254 application is tightly constrained."). Before filing a second or subsequent § 2254 petition in a federal district court, a petitioner must "move in the appropriate court of appeals for an order authorizing the district court to consider the application" and make a prima facie showing that the second or subsequent petition meets certain statutory requirements. *See* 28 U.S.C. § 2244(b).

**IT IS THEREFORE ORDERED** that Petitioner is granted to and including September 17, 2022, to advise the Court, in writing, whether (1) he prefers that the Court stay this matter and hold it in abeyance while he exhausts state-court remedies or (2) he wishes to delete the unexhausted claims in Grounds Two and Three and proceed only on Ground One.

**IT IS SO ORDERED.**

DATED:   This 17th day of August, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge